```
         UNITED STATES DISTRICT COURT
       SOUTHERN DISTRICT OF WEST VIRGINIA
               AT CHARLESTON
```

BUTCH WOODRUM,

    Plaintiff,

v.                            Civil Action No. 2:10-00478

MAPOTHER AND MAPOTHER P.S.C., INC.,
and STEVEN MULROONEY, ESQ.,

    Defendants.

## MEMORANDUM OPINION AND ORDER

Pending is plaintiff Butch Woodrum's motion to remand for lack of subject matter jurisdiction, filed May 10, 2010.

### I. Background and Procedural History

In November 2005, Woodrum, a resident of Lincoln County, began receiving correspondence from a number of debt collectors regarding an alleged debt owed by him to a creditor known as Midland Funding NCC-2 Corporation ("Midland"). (Compl. ¶ 7). For example, by letter dated November 22, 2005, defendant Mapother and Mapother P.S.C., Inc. ("Mapother"), a law firm representing Midland, informed Woodrum that he owed $2,872.06 on his outstanding debt. (Id., Ex. 1). In response to the various debt collectors' correspondence, Woodrum retained his current counsel, Cameron S. McKinney, to represent him with regard to the

alleged debt and debt collection claims.  (Id. at ¶ 8).

On June 7, 2007, Woodrum's counsel informed each of the known debt collectors, including Mapother, that he had been retained by Woodrum regarding the Midland debt.  (Id., Ex. 2). Woodrum's counsel further instructed that the debt collectors were to direct any future correspondence regarding the Midland debt to his office rather than to Woodrum.  (Id.)  Mapother responded by letter dated June 14, 2007, informing Woodrum's counsel that "this file has been closed in our office" and that Mapother "no longer represent[ed] [Midland] concerning this matter."  (Id., Ex. 3).

Despite Mapother's indication to Woodrum's counsel that it no longer represented Midland, Woodrum continued to receive correspondence from Mapother regarding the Midland debt.  (Id. ¶ 13).  On November 13, 2009, defendant Steven Mulrooney, an attorney employed by Mapother, wrote to Woodrum, asserting that "a Judgment has been ordered against [Woodrum] regarding the [Midland debt]" and that "[t]his Judgment may allow [Mapother] to attach [his] non-exempt assets, such as . . . wages, bank accounts, and . . . real estate."  (Id., Ex. 4).  On February 9, 2010, Mulrooney sent Woodrum a second letter, again highlighting the judgment ordered against him and threatening attachment of

certain non-exempt assets.  (Id.).  In addition to these letters, Mapother placed numerous telephone calls to Woodrum's residence and to others in an effort to collect the Midland debt.  (Id. ¶ 16).  Woodrum alleges in the complaint that he is unaware of any judgment ordered against him.  (Id. ¶ 15).

On March 11, 2010, Woodrum instituted this action in the Circuit Court of Lincoln County, naming as defendants Mapother and Mulrooney.  (Notice of Removal ¶ 1).  In the complaint, under a section entitled "CLAIMS FOR RELIEF [Unlawful Debt Collection]," Woodrum alleges that defendants contravened five provisions of the West Virginia Consumer Credit and Protection Act ("WVCCPA").  Specifically, Woodrum alleges that defendants (1) "attempted to collect money alleged to be due and owing . . . by means of threat, coercion or attempt to coerce," in violation of West Virginia Code § 46A-2-124; (2) "unreasonably oppressed or abused [him] in connection with the attempt to collect an alleged debt," in violation of West Virginia Code § 46A-2-125; (3) "unreasonably publicized information relating to an alleged indebtedness," in violation of West Virginia Code § 46A-2-126; (4) "used fraudulent, deceptive or misleading misrepresentations or means to attempt to collect alleged claims and/or to obtain information concerning [him]," in violation of

West Virginia Code § 46A-2-127; and (5) "used unfair or unconscionable means in an effort to collect an alleged debt from [him]," in violation of West Virginia Code § 46A-2-128.  (Compl. ¶¶ 20-24).  Woodrum further contends that defendants' actions were willful, wanton, and carried out with reckless disregard of his rights.  (Id. ¶ 17).  He also claims that, as a result of the defendants' conduct, he has "suffered monetary loss, incidental, consequential, actual and compensatory damages, emotional and mental distress, aggravation, anxiety, damage to his creditworthiness and reputation, annoyance and inconvenience."  (Id. ¶ 18).

In the prayer for relief, Woodrum seeks cancellation of the alleged debt, as well as declaratory relief finding the defendants in violation of the WVCCPA and injunctive relief ordering that defendants cease and desist from engaging in the unlawful acts described in the complaint.  Moreover, Woodrum seeks economic damages; compensatory damages for emotional and mental distress, aggravation, anxiety, damage to creditworthiness and reputation, annoyance, and inconvenience; consequential and incidental damages; statutory penalties pursuant to West Virginia Code § 46A-5-101; punitive damages; reasonable attorney fees and costs of litigation pursuant to West Virginia Code § 46A-5-104;

and prejudgment and postjudgment interest on the aforementioned damages.  The complaint does not specify the amount of damages sought.

On April 13, 2010, defendants removed on the basis of diversity jurisdiction.  As noted, Woodrum moved for remand on May 10, 2010.  Inasmuch as Mapother is incorporated in Kentucky with its principal place of business in Kentucky and Mulrooney is a Kentucky citizen, Woodrum concedes that the parties are completely diverse.  (Pl.'s Mem. Supp. Mot. to Remand 2).  He maintains, however, that the amount in controversy does not exceed $75,000 as required under 28 U.S.C. § 1332.  Accordingly, he contends that the matter must be remanded to the Circuit Court of Lincoln County.

## II. Standard of Review

The court is vested with original jurisdiction of all actions between citizens of different states when the amount in controversy exceeds $75,000.  28 U.S.C. § 1332(a)(1).  The statute establishing diversity jurisdiction is to be strictly construed.  Shamrock Oil & Gas Corp. v. Sheets, 313 U.S. 100, 108-09 (1941); Healy v. Ratta, 292 U.S. 263, 270 (1934); Schlumberger Indus., Inc. v. Nat'l Surety Corp., 36 F.3d 1274,

1284 (4th Cir. 1994).  The party seeking removal bears the burden of establishing federal jurisdiction and, if challenged, also bears the burden of proving that federal jurisdiction was properly invoked.  <u>Mulcahey v. Columbia Organic Chem. Co.</u>, 29 F.3d 148, 151 (4th Cir. 1994).

In a case that is filed initially in federal court, a district court has original jurisdiction if the requisite diversity of citizenship exists unless it "appear[s] to a legal certainty that the claim is really for less than the jurisdictional amount."  <u>St. Paul Mercury Indem. Co. v. Red Cab Co.</u>, 303 U.S. 283, 289 (1938).  However, the "legal certainty" test applies only in instances in which a plaintiff invokes federal jurisdiction by filing a case in federal court.  <u>Landmark Corp. v. Apogee Coal Co.</u>, 945 F.Supp. 932, 935 (S.D. W.Va. 1996).

A different test applies "in removal situations . . . in which the plaintiff has made an unspecified demand for damages in state court."  <u>Id.</u>  A defendant who removes a case from state court in which the damages sought are unspecified, asserting the existence of federal diversity jurisdiction, must prove by a preponderance of the evidence that the value of the matter in controversy exceeds the jurisdictional amount of $75,000.

6

**Tapscott v. MS Dealer Serv. Corp.**, 77 F.3d 1353, 1357 (11th Cir. 1996); **De Aguilar v. Boeing Co.**, 11 F.3d 55, 58 (5th Cir. 1993) and **De Aguilar v. Boeing Co.**, 47 F.3d 1404 (5th Cir. 1995); **Gafford v. Gen. Elec. Co.**, 997 F.2d 150, 158 (6th Cir. 1993); **Gaus v. Miles, Inc.**, 980 F.2d 564, 567 (9th Cir. 1992); **Sayre v. Potts**, 32 F. Supp. 2d 881, 885 (S.D. W. Va. 1999); **Landmark Corp.**, 945 F. Supp. at 935. A court must consider the entire record and make an independent evaluation of whether the amount in controversy has been satisfied. **Weddington v. Ford Motor Credit Co.**, 59 F.Supp.2d 578, 584 (S.D. W. Va. 1999); **Mullins v. Harry's Mobile Home, Inc.**, 861 F. Supp. 22, 23 (S.D. W. Va. 1994).

### III. Amount in Controversy

A. Declaratory and Injunctive Relief

Defendants begin their analysis by noting that the balance on the Midland debt is currently $4,110.55. (Defs.' Resp. 4). Defendants maintain that, should Woodrum succeed in proving willful violations of the WVCCPA, he would be entitled to cancellation of the outstanding debt. Accordingly, defendants contend that the value of the litigation should include the

$4,110.55 balance.

In response, Woodrum maintains that the balance of his alleged debt to Midland should not be included in calculating the amount in controversy. He asserts that, after he moved for remand, defendants provided him with proof that Midland obtained a valid judgment order against him in the Magistrate Court of Lincoln County in April 2008. (Pl.'s Reply 2). Inasmuch as the underlying debt was "legitimately incurred," Woodrum reasons that it cannot be cancelled. (Id.). Accordingly, he contends that it is unlikely he will obtain the injunctive relief sought and that the outstanding balance on his Midland debt therefore should not be included in valuing the litigation.

As an initial matter, Woodrum's contention lacks merit inasmuch as it is predicated upon evidence not available in the record at the time of removal. It is well settled that a court, in assessing whether the requisite jurisdictional amount is present, must base its decision "on the record existing at the time the petition for removal was filed." Sayre v. Potts, 32 F. Supp. 2d 881, 886 (S.D. W. Va. 1999) (citing St. Paul Mercury Indem. Co. v. Red Cab Co., 303 U.S. 283, 291 (1938)). Specifically, the court should consider "the judgment that would be entered if the plaintiff prevailed on the merits of his case

as it stands at the time of removal." Id. At the time of removal, plaintiff alleged that the Midland debt was invalid and that defendants had violated the WVCCPA in attempting to collect on that debt. (Compl. ¶ 23). Accordingly, that plaintiff may now have evidence demonstrating the Midland debt's validity is of no moment. Should he prevail on the merits of his case as it stood at the time of removal, he may well be entitled to cancellation of the Midland debt.

Moreover, even assuming the validity of the Midland debt, Woodrum's contention nevertheless fails inasmuch as a debt need not be invalid before it can be declared unenforceable under the WVCCPA. To the contrary, the WVCCPA specifically contemplates cancellation of a debt where a creditor "has willfully violated the provisions of this chapter applying to . . . any prohibited debt collection practice." W. Va. Code § 46A-5-105. In his complaint, Woodrum alleges a variety of illegal debt collection practices on defendants' part. He further alleges that these violations were committed willfully. Should Woodrum succeed in proving the alleged willful violations, he may be entitled to cancellation of the debt, even if that debt was legitimately incurred. Accordingly, the outstanding balance of the debt, $4,110.55, should be considered in valuing the

litigation. See Hunt v. Wash. State Apple Adver. Comm'n, 432 U.S. 333, 347 (1977) ("In actions seeking declaratory or injunctive relief, it is well established that the amount in controversy is measured by the value of the object of the litigation.").

B.  Compensatory Damages

In calculating the compensatory damages figure, the parties assert that this court's decision in McGraw v. Discover Financial Services, Inc., 2005 WL 1785259 (S.D. W. Va. July 26, 2005), should guide the analysis. The defendants rely on McGraw in asserting that Woodrum is likely to recover $4,000.00 in compensatory damages, whereas Woodrum cites that decision to support his contention that compensatory damages are unlikely to exceed $1,000.00. Inasmuch as the parties' compensatory damages figures are relatively similar, the court accepts $4,000.00 as the maximum reasonable amount for compensatory damages in this action.

C.  Statutory Penalties

The remedial provisions for a violation of the WVCCPA are found in §§ 46A-5-101, et seq. Section 46A-5-101 provides,

in pertinent part, that

> [i]f a creditor has violated the provisions of this chapter applying to . . . any prohibited debt collection practice, . . . the consumer has a cause of action to recover actual damages and in addition a right in an action to recover from the person violating this chapter a penalty in an amount determined by the court not less than one hundred dollars nor more than one thousand dollars.

W. Va. Code § 46A-5-101(1).  There is authority that each violation of the WVCCPA creates a single cause for recovery of a single penalty.  See Sturm v. Providian Nat'l Bank, 242 B.R. 599, 603 (S.D. W. Va. 1999).  Moreover, a civil penalty imposed by the court may, in the court's discretion, be adjusted for inflation since September 1, 1974, in an amount equal to the consumer price index.  W. Va. Code § 46A-5-106.  Here, Woodrum seeks the imposition of civil penalties in the amount of $4,414.00 for each violation.[1]

The parties agree that Woodrum seeks the imposition of four civil penalties.  Accordingly, the court concludes that Woodrum is seeking civil penalties that, if adjusted for inflation, would entitle him to an award of between $1,765.60 and $17,656.00.

---

[1] The parties agree that $4,414.00 is the maximum civil penalty available under § 46A-5-101, meaning that the discretionary increase for inflation would allow the court to impose a civil penalty between $441.40 and $4,414.00.

**D.  Punitive Damages**

In addition to compensatory and statutory damages, punitive damages may be included for the purpose of determining the amount in controversy if the governing substantive law permits a court to award them for the claim being asserted by the plaintiff.  See 14B CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 3702 (3d ed. 1998).  West Virginia Code § 46A-5-101 outlines the types of damages that may be recovered for various violations of the WVCCPA, including the prohibited debt collection practices set forth in sections 46A-2-123 through 46A-2-129.  Inasmuch as § 46A-5-101 contemplates only the recovery of actual damages and a civil penalty, punitive damages are not available under the provisions of the WVCCPA relied upon by Woodrum.  See One Valley Bank of Oak Hill, Inc. v. Bolen, 188 W. Va. 687, 425 S.E.2d 829 (1992).  Accordingly, the court does not include punitive damages in its analysis of the amount in controversy.

**E.  Attorney Fees**

It is accepted under 28 U.S.C. § 1332(a) that when a right to attorney fees is provided by contract or state statute, a court may consider attorney fees as part of the amount in

controversy.  See Spielman v. Genzyme Corp., 251 F.3d 1, 7 (1st Cir. 2001); see also Manguno v. Prudential Prop. & Cas. Ins. Co., 276 F.3d 720, 723 (5th Cir. 2002) ("[I]f a state statute provides for attorney's fees, such fees are included as part of the amount in controversy."); Galt G/S v. JSS Scandinavia, 142 F.3d 1150, 1156 (9th Cir. 1998) ("[W]e hold that where an underlying statute authorizes an award of attorney's fees, either with mandatory or discretionary language, such fees may be included in the amount in controversy.").  West Virginia Code § 46A-5-104 provides that, "[i]n any claim brought under this chapter applying to . . . any prohibited debt collection practice, the court may award all or a portion of the costs of litigation, including reasonable attorney fees."  W. Va. Code § 46A-5-104.  Accordingly, inasmuch as the state statute at issue provides for attorney fees, the court may consider them as part of the amount in controversy.

   In their response to Woodrum's motion to remand, defendants assert that "a potential value of $25,000.00 should be assigned to plaintiff's attorney's fee claim in this analysis," relying on a number of this court's decisions involving alleged WVCCPA violations.  (Defs.' Resp. 7).  Woodrum does not contest this figure.  (Pl.'s Reply 4).  Inasmuch as the parties seem to agree to that amount, the court concludes that a reasonable

13

preliminary estimate of a plaintiff's attorney fees for a case of this nature, including a trial on the merits, would not exceed $25,000.00.

F.  Summary of Damages

Having reviewed the representations of the parties, the court concludes that this dispute, originating over a $4,110.55 debt, two debt collection letters, and a handful of phone calls, does not merit federal retention.  Rather, this action is seen to be one that the amount in controversy threshold of 28 U.S.C. § 1332 has directed to remain in the state courts even though the parties are of diverse citizenship.  Although the vagueness in Woodrum's requests for relief may have contributed to the removal, the fact remains that even if completely successful, he can reasonably expect injunctive relief valued at $4,110.55; $4,000.00 in compensatory damages; $1,765.60 to $17,656.00 in civil penalties; and reasonable attorney fees of no more than $25,000.00.  At best, Woodrum is seeking $50,766.55.  Given the nature of the dispute and the monetary amounts involved, this figure is likely overly generous.  The court is accordingly unable to find that defendants have shown the amount in controversy to be more likely than not in excess of $75,000.00.

### IV.  Request for Attorney Fees

An order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal.  28 U.S.C. § 1447(c).  The district court has a measure of discretion in determining whether to award fees when it chooses to remand a case.  In re Lowe, 102 F.3d 731, 733 (4th Cir. 1996).  Bad faith is not a prerequisite to obtaining attorney fees under 28 U.S.C. § 1447(c).  Id.

The court declines to award attorney fees to Woodrum in this instance.  Defendants' attempt to remove this case to federal court appears to have been objectively reasonable, especially in light of the vagueness of the complaint.  See Martin v. Franklin Capital Corp., 546 U.S. 132, 139 (2005).  Further, it does not appear that defendants acted in bad faith.  Thus, Woodrum's request for attorney fees is denied.

### VI.

Based upon the foregoing, it is ORDERED as follows:

1.  Plaintiff's motion to remand be, and it hereby is, granted;

2.  Plaintiff's request for attorney fees be, and it hereby is, denied; and

3.  This action be, and it hereby is, remanded for all further proceedings to the Circuit Court of Lincoln County.

The Clerk is directed to forward copies of this memorandum opinion and order to all counsel of record and a certified copy to the clerk of court for the Circuit Court of Lincoln County.

DATED: October 5, 2010

John T. Copenhaver, Jr.
United States District Judge